301 So.2d 619 (1974)
STATE of Louisiana, Appellee,
v.
Grady W. "Bill" BATES, Appellant.
No. 54899.
Supreme Court of Louisiana.
October 11, 1974.
Rehearing Denied November 6, 1974.
*620 Bobby L. Culpepper, Donald C. Brown, Holloway, Baker, Culpepper & Brunson, Jonesboro, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Charles A. Traylor, II, Asst. Dist. Atty., for appellee.
TATE, Justice.
The defendant was convicted of distribution of marijuana, La.R.S. 40:966 (1972), and sentenced to three years at hard labor, suspended, and a fine. On his appeal, he argues all twenty-one bills of exceptions perfected.
Context facts:
The defendant is a student at Northeast Louisiana University in Monroe. A classmate, Terry Shields, struck up a friendship with him. Shields talked about his own drug habit and asked the defendant Bates several times if he knew where he, Shields, could obtain some marijuana.
One evening at a night club Shields asked Bates again, stating he was going to a concert and needed some. Bates and Shields arranged for Bates to get a lid of marijuana from his apartment and deliver it to Shields for $13.00, the cost of it to Bates. Bates testified that this was the only marijuana he had, and that he was trying to break the habit.
Bates met Shields in the school library. Shields had his college roommate, Cook, along with him. Bates and Shields went into the bathroom, where the marijuana was transferred to Shields in exchange for $13.00. This is the offense with which Bates is charged. On at least five other occasions after this incident of November 22, 1972, Shields tried to buy marijuana from Bates; Bates so testified, and Shields admitted this was possibly so.
It turned out that Shields and Cook, college students, were also informers on the payroll of the Monroe Police Department. Theirs was a successful undercover operation, Shields testified, because "we wound up with approximately 31" of their fellow students charged with narcotic offenses. Tr. 276. As instancing his skillful and daring investigative techniques, he indicated that he simulated the use of marijuana "on different occasions making different drug cases", that he dated a co-ed six occasions or so, and that he then reported her use of drugs as one of the 31 cases he made. Tr. 263.
As Shields indicated, his approach was to become friendly with likely suspects. He noted, for instance, with regard to Bates, "Just like when you would go in and sit in the classroom you can sometimes spot people that you feel like you might be able to make a case on, and he was just one of them." Tr. 270. (Bates was a Vietnam war veteran and a former rock musician.)
Entrapment:
The chief defense to the merits is entrapment. This defense is essentially raised before this court by bills taken to the denial of motions for a directed verdict (Bill No. 19) and for a new trial (Bill No. 20).
The defense implies that, by subsidizing two undercover agents to go to school for the chief purpose of discovering other students engaged in drug abuses, the government is unintentionally in the dirty business of using informers who encourage drug violations in order to add to their own income and usefulness. The defendant urges in particular, that his non-commercial "distributing" *621 of the marijuana to one who characterized himself as a friend in need, was an act brought on by the informer's repeated requests and solicitations, as well as the latter's deliberate efforts to induce the actual drug violation with which he is now charged.
However, entrapment is a factual defense on the merits. State v. Kelly, 263 La. 545, 268 So.2d 650 (1972). It may be raised as a question of law, if the trial court fails to give a charge where the facts merit it. State v. Kelly, cited above. Here, the defendant requested a full charge of entrapment, which was apparently given as no bill is taken to any refusal to so charge.
In rejecting the fairly strong testimony that the undercover agent induced the crime, the trial jury apparently determined that the defendant had the necessary intent to commit the crime even before the agent afforded him an opportunity to do so, and that the agent merely afforded the defendant an opportunity to commit the offense rather than induced it. Bound by the limits of appellate review in criminal appeals, we cannot say the trial jury erred.
Entrapment is also raised by bills taken to the denial of a motion to suppress the marijuana, as allegedly obtained by unlawful means. (Bill Nos. 5 and 6.) The motion to suppress the use of physical evidence at the trial is authorized by La.C.Cr.P. art. 703. The statutory ground for the motion is an unconstitutional search or seizure. Since the plea of entrapment does not raise this type of issue but rather is a defense on the merits, a motion to suppress may not be utilized to raise such defense in advance of the trial itself. State v. Dudek, 263 La. 258, 268 So.2d 217 (1972).
Unconstitutionality of Statute:
The defendant contends that La.R.S. 40:966 (1972) is unconstitutional because it punishes with penitentiary terms the "distribution" of controlled drugs, whether the act punished is actually a commercial pushing operation or instead a gratuitous or (as here) non-profit transfer of a prohibited substance. (Bill No. 7.)
No legal authority is cited in support of this contention. The argument appears to address itself to the legislature rather than to the courts.
Motion to Quash the Indictment:
Four other bills were taken to the denial of motions to quash the indictment. (Bill Nos. 8, 9, 10, and 11.)
We may simply state the indictment is sufficient against the various technical attacks raised. It charges that the defendant on November 22, 1972 did "knowingly and intentionally distribute a controlled dangerous substance, to-wit: Marijuana, to Terry M. Shields and Dennis V. Cook, contrary to the provisions of R.S. 40:966."
This sufficiently informs the defendant and the court of the nature and the cause of the accusation against him. La.Const. Art. I, Section 10 (1921). It is sufficient to enable him to plead conviction or acquittal in bar of any other prosecution for the sale of the drug on the date in question to either Shields or Cook.
Insofar as the motions charge that the indictment is defective in not charging which type of marijuana[1] was distributed, such contention is found without merit by the reasoning of State v. (George Harold) Knight, 298 So.2d 726 (La.Sup.Ct., 1974).[2]
*622 The argument that the indictment fails to charge an offense under the statute is also quite technical. La.R.S. 40:966 prohibits distribution of "a controlled dangerous substance classified in Schedule I." (Italics ours.) However, 40:963, providing for Schedules I through V, establishes them as schedules "of controlled substances"that is, "dangerous" is omitted from the description of the controlled substances.
Thus, the argument goes, Schedule I does not set forth any "controlled dangerous substances", it includes only "controlled substances". Therefore, the defendant could not be charged with violating La.R.S. 40:966, which only punishes distribution of the former ("controlled dangerous substances") in Schedule I as set forth; since there are none.
This extremely technical argument falls, if only because the definitions section of the statute defines a "controlled dangerous substance" as one of the drugs listed in Schedules I through IV. See La.R.S. 40:961(7).
Other Bills:
The other bills do not require discussion. They raise issues correctly decided by the trial court, under applicable statute or decision: or else within its discretion, clearly non-abused.
Decree:
For the reasons assigned, we affirm the conviction and sentence.
Affirmed.
NOTES
[1] "Cannibis sativa L." was, at the time, the only type defined as illegal. See La.R.S. 40:961(18) (1972).
[2] The expert evidence in the present case, as in Knight, to the effect that marijuana or "cannabis" has only one genus and one species which however is sometimes denoted as "cannabis sativa L." We do not find persuasive the contention that the trial court abused its discretion by recognizing the witness as an expert, in view of his extensive experience and training in the field. (Bill Nos. 16, 18.)