625 So.2d 610 (1993)
STATE of Louisiana, Plaintiff-Appellee,
v.
Ronnie K. HONGO, Defendant-Appellant.
No. CR93-287.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1993.
*611 Don M. Burkett, Many, for State.
Steven Randal Thomas, Mansfield, for Ronnie K. Hongo.
Before STOKER, LABORDE and YELVERTON, JJ.
LABORDE, Judge.
Defendant, Ronnie K. Hongo, was convicted of attempted second degree murder and possession of a firearm by a felon in a trial by jury. Defendant appeals only his conviction of attempted second degree murder and his subsequent sentencing as an habitual offender, fourth offense, resulting in a mandatory sentence of life imprisonment without benefit of parole, probation, or suspension of sentence. We affirm the conviction, but set aside the sentence and remand for resentencing due to the trial court's failure to assign a determinate sentence for each conviction.

FACTS
On June 4, 1991, victim Karen Garner was shot once by the defendant. The bullet entered the left temporal area of her head and exited from the area over the left eye, in the middle of the eyebrow.
Ms. Garner testified that she and the defendant had known each other for approximately fifteen years and had lived together for three years. They broke off their relationship sometime during the month of May after a fight in which Ms. Garner testified she had scratched the defendant's eye.
Ms. Garner testified that on June 4, 1991, she was sitting on the couch in her parents' house watching her sister's children take their naps when the defendant arrived on the front porch. She testified that the defendant was standing in front of the screen door, reached in his pants and pulled out a pistol. Ms. Garner testified that she then turned away from the defendant and started walking toward the hall which led to the bedrooms where her father was resting and that she *612 was facing away from the defendant when she heard two shots fired. Ms. Garner stated that she continued to run toward her father's room and hid in the closet. Her father, Don Garner, testified on the other hand that she tried to get in the closet but never made it. Mr. Garner did not see the defendant before the shooting but did see him after he heard the two gunshots. Mr. Garner heard no argument or fighting prior to the shots, and testified that he would have been able to hear it if there had been. There was some confusing testimony as to the number of children in the house at the time of the shooting. Ms. Garner said three were present while Mr. Garner said there were four in the room when he arrived. Mr. Garner also stated that the oldest boy was in the yard.
At trial defendant claimed he had no pistol, but went to the Garner house with a twenty gauge shotgun in his left pant leg with the butt sticking out of his waistband. He claims no children were present in the room when he sat to talk to Ms. Garner. Defendant claims Ms. Garner had the pistol on the table near the couch when he sat down to talk to her. He alleged that the discussion turned into a "playful" wrestling match in which the pistol discharged and struck Ms. Garner in the head. The defendant claimed that he did not know he had shot Ms. Garner but left because the gun went off.

ERRORS PATENT
In accordance with La.C.Cr.P. Art. 920, this appeal record was reviewed for errors patent on the face of the record. Two errors patent were discovered.
The first error was the failure of the trial judge to inform the defendant of his statutory right to remain silent and to be tried to determine the truth of the matters alleged in the habitual offender bill with the state carrying the burden of proof pursuant to La. R.S. 15:529.1. Since the defendant has raised the issue of sufficiency of evidence at the habitual offender proceedings as his third assignment of error, the court will address this issue with that assignment.
The second error discovered was the pronouncement of an indeterminate sentence. Since the defendant was convicted of two crimes, the single sentence imposed was indeterminate pursuant to State v. Bessonette, 574 So.2d 1305 (La.App. 3 Cir.1991) and La. C.Cr.P. Art. 879. For this reason his sentence should be vacated, set aside and the matter remanded for resentencing.[1]
ASSIGNMENT OF ERROR NO. 1:
By his first assignment of error, relator alleged that the state failed to carry its burden of proving beyond a reasonable doubt that the defendant committed the offense of attempted second degree murder. Defendant argued that the evidence produced was insufficient or nonexistent and that the court erroneously allowed a police officer to testify as an expert with regard to missile paths and trajectories over defense counsel's objection, which constituted error. The defendant also claimed that the jury was not allowed to fairly judge the relative merits of the two versions of the events because of the testimony of Officer Martone.
The defendant questioned only the sufficiency of the evidence presented to convict him on the charge of attempted second degree murder. When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore the appellate court should not second *613 guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La. 1983).
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. Concerning attempted second degree murder, La.R.S. 14:30.1 provides:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
and La.R.S. 14:27 provides:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
Reading the pertinent parts of these articles together, the state in this case had the burden of proving that the defendant had the specific intent to kill and did an act for the purpose of and tending directly toward accomplishing it. State v. Butler, 322 So.2d 189 (La.1975); State v. Guin, 444 So.2d 625 (La.App. 3 Cir.1983). Specific criminal intent has been statutorily defined as the state of mind which exists when circumstances indicate that the offender actively desired the proscribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Since specific intent is a state of mind, it need not be proven as a fact, but rather may be inferred from the circumstances and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982).
The state produced the testimony of the victim, Ms. Garner, which indicated that the defendant, armed with a gun, came to her parents' house, where she resided. Once he arrived he fired two shots into the living room, one of which hit Ms. Garner. Dr. Oey, the emergency room treating physician, testified that the bullet entered the left temporal region of Ms. Garner's head and exited the middle of her left eyebrow, blinding her in that eye. The testimony of the investigating officer, Officer Martone, indicated that the bullet holes he observed, the location where he found the bullets, and the direction in which the bullets were traveling, were consistent with the victim's testimony. Officer Martone also testified that after his arrest the defendant made statements admitting that he had gone to the Garner house with the intent to shoot Don Garner, but that he ended up shooting Karen Garner instead.
The defendant's testimony contradicted that of Ms. Garner and Officer Martone. He claimed that the pistol belonged to the Garners and was at the house before he arrived. He did admit that he was armed when he arrived at the Garner house, but claimed that he was carrying a shotgun instead. He claimed that he and Ms. Garner were playfully wrestling when the pistol went off and injured Ms. Garner.
The defense objected to Officer Martone's testimony as to whether the bullet paths seemed consistent with Ms. Garner's statements, and as to the statements made by the defendant to him just prior to booking. The court overruled both of these objections. In arguing this assignment of error, regarding the sufficiency of the evidence, the defendant claimed the jury should not have been allowed to consider this testimony.
*614 Officer Richard Martone, the assistant chief of police for the Many City Police Department, was a twenty-one year veteran at the time of the trial and had served the first fifteen of those years with the Baton Rouge City Police Department. He had attended seminars at the Law Enforcement Institute at L.S.U. While investigating the shooting scene, Officer Martone noted that the first bullet hole was approximately four feet above the floor and approximately one and one-half feet north or left of the hallway. A bullet hole was located on the opposite side of the wall in the next room. A bullet hole was also located in a second wall which ran down the north side of the hallway and perpendicular to the first wall. The hole in the second wall was located approximately three and one-half feet from the floor. No hole was found on the other side of the wall facing the hall. Before the officer could testify about any further investigation he performed, the defense objected. The defense claimed that any testimony about where the bullets came from required an expert in ballistics and trajectory. The objection was argued out of the hearing of the jury. The court ruled that the officer could testify as to his visual observations and whether a bullet fired from a certain direction would be consistent with those observations.
Officer Martone then testified that because the hole on the panelled side of the wall which faced the living room area was indented and the hole in the sheetrock on the other side of the wall in the bedroom protruded, this bullet's direction of travel was from the living room where the victim was, into the next room, the bedroom. A bullet hole was found in a cedar chest, which was sitting on the chest of drawers against the wall in the corner of the bedroom. The officer testified about the indention and splinter patterns found in the chest and the wall behind it. He testified that the wall behind the chest had a hole only on one side and that a bullet was found inside the wall space of this wall. Finally, the officer testified that considering the way these holes line up that the line which can be drawn through them points in the general direction of where the screen door was located. The officer estimated the distance from the door to the holes at approximately eight to thirteen feet. A second bullet was also found in the south hallway wall, having penetrated the first side of the wall and remaining lodged in the sheetrock on the other side.
The court in State v. Johnson, 315 So.2d 297, 298 (La.1975), found that to testify on a given matter a person must be an expert witness only if it is necessary for him to give his opinion based on knowledge obtained only by means of special training or experience. In that case, the court held that the testimony by a witness that two samples of paints appeared to him to be the same color under microscopic examination and that neither paint was soluble in acetone was information within the personal knowledge of the witness. The trial court ruling that an expert was not required for this testimony was upheld by the reviewing court.
In the present case, Officer Martone testified about the bullet holes he observed in the walls and in a chest at the scene of the crime. Photographs of the holes and the cedar chest were presented and entered into evidence. The officer testified to the fact that he observed the holes he found were indented on the side of entry and frayed or splintered on the side of exit. He also testified about where he found the bullets. Basically, the officer was testifying as to his observations and made a reasonable inference about the direction in which the bullets were traveling. Additionally, the officer testified that he observed when a line was drawn through the bullet holes, and the bullets' direction of travel was taken into consideration, it was consistent with Ms. Garner's statements of where the shots were fired from.
Citing State v. Sayles, 395 So.2d 695 (La. 1981), this court in State v. Williams, 439 So.2d 663 (La.App. 3 Cir.1983), acknowledged that while it is true a lay witness can testify as to facts within his knowledge, a witness is permitted to draw reasonable inferences from personal observation. In State v. Williams, supra, the court found neither the testimony that the parts of the cow found all came from the same animal, nor the description of a wound as one made by a small caliber weapon, were the kind of testimony *615 requiring special training or experience for the officers testifying. Similarly, the testimony of Officer Martone regarding the bullet holes, the pattern of indentions and splintering were only personal observations by the officer. These observations were corroborated by the photographs and the cedar chest itself. The testimony of the officer regarding the consistency of these bullet hole patterns with Ms. Garner's statements was a reasonable inference, not requiring special training or experience. The trial court did not err in overruling the defendant's objection. Therefore, the jury properly considered this evidence.
Officer Martone also testified about incidents occurring relative to the defendant turning himself in at the sheriff's office to Detective James McComic. Sergeant Brumley was also present. The officer testified the first thing he did when defendant arrived was to read him his Miranda Rights. When asked, defendant responded he understood his rights and the officer indicated this on the form. The defendant then signed the form. The defendant indicated he wished to speak only to Detective McComic, but did not answer when Officer Martone asked if the defendant wanted him to leave. Officer Martone stayed.
Officer Martone testified that later he asked if defendant had brought the gun with him and the defendant answered that he had not. Officer Martone said he suggested that the defendant should wait until his attorney arrived before talking any further. There is no evidence that the defendant himself stated he wanted counsel present before he would answer questions. The defense counsel objected to the officer testifying as to any further statement made by the defendant after this point, but the judge overruled his objection. The officer then recounted that after he handcuffed the defendant and proceeded to bring him upstairs for booking, the defendant repeatedly said he wanted to tell the officer about the incident. The officer urged the defendant to wait for his attorney. The officer stated he then asked the defendant directly, "Did you go to Karen Garner's house and shoot her?" and the defendant said yes. The officer stated the defendant volunteered to bring in the gun if he was allowed out on bail that day. Officer Martone said that the second time he asked defendant if he shot Ms. Garner, he again said yes, but claimed he had actually gone to the Garner house to shoot Mr. Garner. According to the officer, the defendant stated he fired into the room despite the fact Mr. Garner was not present and Ms. Garner "jumped up and ran into the bullet." The officer did not recall any mention of a shotgun or a fight with Ms. Garner. The officer said the statement was put in his report which he made within the next couple of days.
Confessions obtained by any direct or implied promises or by the exertion of improper influence are involuntary and inadmissible as a matter of constitutional law. Hutto v. Ross, 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976). This court in State v. Landry, 502 So.2d 281, 285 (La.App. 3 Cir. 1987), writ denied 508 So.2d 63 (La.1987), stated:
In Louisiana the statutorily mandated test for voluntariness is not whether a confession was induced by improper external forces but whether the confession was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451. The State has the burden of affirmatively proving that a confession was not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises and must prove beyond a reasonable doubt that a confession was free and voluntary. R.S. 15:451. The admissibility of a confession is in the first instance a question for the trial judge. His conclusion on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless it is not supported by the evidence. State v. Jackson, 381 So.2d 485 (La.1980). Whenever the defendant alleges police misconduct in eliciting a confession, it is incumbent upon the State to rebut these allegations specifically. State v. Welch, 448 So.2d 705 (La.App. 1st Cir. 1984), writ denied, 450 So.2d 952 (La.1984). Furthermore, when a ruling on a motion to *616 suppress a confession or statement is adverse to the defendant, prior to presenting the confession or statement to the jury the State must introduce evidence concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement. LSA-C.Cr.P. Art. 703(G).
The defendant alleged no police misconduct in extracting the statement. Rather he alleged no statement was made. The state presented ample evidence of the situation of the statements and of their voluntary nature. The trial court did not err in overruling the defendant's objection and allowing the statements. Therefore, the testimony of Officer Martone was properly considered by the jury, the trier of fact.
The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Williams, 452 So.2d 234 (La.App. 1 Cir.1984), writ not considered, 456 So.2d 161 (La.1984), reconsideration not considered, 458 So.2d 471 (La.1984). The fact that the record contains evidence which conflicts with the testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Tompkins, 403 So.2d 644 (La.1981), appeal after remand 429 So.2d 1385 (La. 1982). Thus, in the absence of internal contradictions or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient to support the requisite factual conclusion. State v. Owens, 606 So.2d 876 (La.App. 2 Cir.1992). No such irreconcilable conflict existed in Ms. Garner's version of events.
Both the testimony of Ms. Garner and Officer Martone indicate the defendant aimed and fired a pistol twice at Ms. Garner. Both shots were three to four feet above the ground. Ms. Garner is approximately five feet, six inches tall. The shots fired were aimed at the area of her vital regions. Officer Martone testified the defendant admitted he had gone to the Garner house intending to kill Mr. Garner and that he instead chose to fire into the living room even though Mr. Garner was not present. Therefore, sufficient evidence existed from which the jury could infer, beyond a reasonable doubt, that the defendant had the requisite intent to kill.
The second element of the crime charged requires the state prove the defendant did an act in furtherance of the crime. The defendant's firing of shots was in furtherance of his attempt to kill Ms. Garner. In fact, the wound inflicted cost Ms. Garner the sight of her left eye. For these reasons it can be said that, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime to be proven beyond a reasonable doubt. Defendant's first assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2:
By his second assignment of error the defendant alleges the trial court erred when it failed to grant his motion to suppress concerning his previous convictions on Boykin grounds. Failure to argue an assignment of error constitutes a waiver of that error.
In brief, defense counsel fails to argue or cite any legal authority in support of these assignments of error.
The guidelines regarding the appellant's brief are set forth in the Uniform Rules Courts of Appeal, Rule 2-12.4, which states in pertinent part:
"The brief of the appellant or relator shall set forth ... a succinct syllabus or statement of the principles of law relied upon with corresponding citations of authority,... the issues presented for review, an argument confined strictly to the issues of the case ... giving accurate citations of the pages of the record and the authorities cited....
* * * * * *
All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed."
Failure to argue assignments of error on appeal constitute a waiver of that assignment. Assignments of error not briefed are considered abandoned. State v. Dewey, 408 So.2d 1255 (La. *617 1982); State v. Crawford, 441 So.2d 813 (La.App. 3 Cir.1983).
Where a defendant has raised no legal argument in support of his allegation alleged in his assignment of error, that allegation was deemed abandoned upon appeal. State v. Bates, 301 So.2d 619 (La.1974); State v. Howard, 443 So.2d 632 (La.App. 3 Cir.1983), writ denied, 444 So.2d 1215 (La.1984).
For the foregoing reasons, these assignments of error should be considered abandoned on appeal and will not be considered by this Court.
State v. Lewis, 576 So.2d 1106, 1110 (La.App. 3 Cir.1991), writ denied, 580 So.2d 669 (La. 1991). The defendant's single sentence addressing this issue on appeal in a very broad manner does not sufficiently argue this assignment of error.
In light of the evidence before us, we find no basis for reversal. In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the court held that for a guilty plea to be valid, the record of the colloquy must affirmatively evidence that the accused was informed of his right against self incrimination, his right to trial by jury and his right to confront his accusers. These requirements must be met to ensure that the guilty plea was intelligently and voluntarily made. The guilty plea for defendant's first conviction was entered on May 18, 1977. A certified copy of the minutes of this guilty plea hearing states that before accepting the defendant's plea of guilty to aggravated battery, the court inquired whether the defendant understood that by entering his plea he was waiving his right to trial by jury, his right against compulsory self-incrimination and his right to confront his accusers. The minutes indicate the defendant replied affirmatively. Defendant was represented by counsel, as evidenced by the minutes. The court confirmed the defendant's knowledge of the charge to which defendant was pleading and the maximum penalty therefor. The defendant again replied affirmatively when asked if his plea was being entered freely and voluntarily. The minutes reflect a valid guilty plea and the defendant has presented no evidence to the contrary.
The second conviction in question was pursuant to a guilty plea to attempted armed robbery. The plea was entered on February 19, 1982. A certified copy of the minutes states that the court informed the defendant of his constitutional rights as per Boykin v. Alabama. A copy of the transcript of this guilty plea hearing, marked as filed into the record on April 28, 1982, confirms the minutes. The records indicate that the defendant was represented by counsel. No errors exist in relator's guilty plea for this prior conviction.
The third prior conviction of which the defendant complained occurred on October 1, 1990. The defendant pled guilty to one count of public intimidation. The minutes reflect that before accepting the guilty plea the court informed him of his right to trial, right to confront the witnesses against him, right to a presumption of innocence and the right to remain silent, among other things. The defendant acknowledged that he understood these rights and chose to waive them by pleading guilty. The minutes indicate that the defendant was represented by counsel. Therefore, the record supports a finding that this plea was valid.
The defendant was convicted of his fourth offense after a jury trial in which the jury returned a unanimous verdict of guilty on the charges of attempted second degree murder and possession of a firearm by a convicted felon.
Because the defendant presented no evidence to the contrary, the court finds that the trial court did not err when it denied defendant's motion to suppress his prior convictions on Boykin grounds.
ASSIGNMENT OF ERROR NO. 3:
By his third assignment of error the defendant alleged that the state failed to prove beyond a reasonable doubt that the defendant was a habitual offender under the provisions of La.R.S. 15:529.1 as a fourth felony offender. The defendant argued that the prior felonies used to support enhancement of his sentence were not proven beyond a reasonable doubt, the standard set forth in State v. Brown, 514 So.2d 99 (La.1987), rehearing denied; cert. denied 486 U.S. 1017, *618 108 S.Ct. 1754, 100 L.Ed.2d 216, rehearing denied 487 U.S. 1228, 108 S.Ct. 2888, 101 L.Ed.2d 923. Alternatively, the defendant argued that, even assuming the state had proven the defendant had prior convictions, it had failed to prove that the cleansing period had not elapsed. In either case the defendant alleged that his adjudication as an habitual offender, fourth offense, was improper and that the adjudication and the enhanced sentence should be reversed.
The record revealed that in none of the hearings addressing the defendant's habitual offender status was the defendant informed of his statutory right to remain silent. Failure to warn is error patent, but the failure of the trial court to advise a defendant of his right to remain silent can constitute harmless error if competent evidence is presented at the habitual offender hearing to establish the prior felony and that relator is the person convicted of the prior felony offense stated in the habitual offender bill. State v. Jackson, 563 So.2d 1362 (La.App. 3 Cir.1990); State v. Mallett, 552 So.2d 28 (La.App. 3 Cir.1989), writ denied, 556 So.2d 1258, 558 So.2d 567 (La.1990); reconsideration denied 590 So.2d 585 (La.1992).
Other than in the habitual offender statute itself, La.R.S. 15:529.1, there is no statutory burden of proof set out. La.R.S. 15:271 provides that the state bears the burden of proving beyond a reasonable doubt each element of the crime necessary to constitute a defendant's guilt, if the defendant has not pled guilty. However, as indicated in the statute's title, and confirmed in jurisprudence, La.R.S. 15:529.1 is a sentencing statute.
The court in State v. Langendorfer, 389 So.2d 1271 (La.1980), in ruling on the inapplicability of double jeopardy to the habitual offender proceeding stated, "[A] multiple offender proceeding is not the trial of a criminal charge. Such a proceeding is merely part of sentencing and allows enhanced penalties for repeat offenders." (Emphasis added.) This court in State v. Walker, 432 So.2d 1057, 1060 (La.App. 3 Cir.1983), has described the habitual offender proceeding as being "in the nature of an enhancement of penalty rather than a prosecution for a crime," citing State v. Stott, 395 So.2d 714 (La.1981); State v. Walker, 416 So.2d 534 (La.1982). "A hearing on a multiple offender bill is a trial only in a very broad sense. It is more pertinently an inquiry into defendant's prior criminal conviction or convictions, as part of the sentencing process." State v. Hill, 340 So.2d 309, 312 (La.1976).
The defendant cites State v. Brown, supra, as his authority for the required burden of proof in an habitual offender hearing. The court in Brown, however, was addressing the issue of admissibility of prior convictions for consideration during the penalty phase of a first degree murder trial in which the death penalty was sought. In deciding the issue, the court stated in dicta that,
"Arguably, ..., the multiple offender situation, where the prior conviction is an element of the offense charged, and therefore must be proven beyond a reasonable doubt, requires more with respect to corroborative evidence than the penalty phase of a capital proceeding, when the prior convictions are used to place the character of the accused in issue."
State v. Brown, supra, at 106-107. However, this statement in dicta is not controlling. It is well settled that the adjudication of habitual offender status is part of sentencing and is not part of the crime itself. This is in contrast to La.R.S. 14:98, operating a vehicle while intoxicated, which includes different levels for subsequent convictions for violation of its provisions in the statutory definition of the crime itself, along with heavier penalties.
This court is aware of no jurisprudence establishing that the standard of beyond a reasonable doubt should be applied to a habitual offender proceeding.[2] The only evidentiary requirements found are those contained in the statute itself.
Both proof of the existence of the prior convictions and proof of the identity of the *619 defendant as the person convicted of those prior crimes is required. La.R.S. 15:529.1(F) permits the establishment of prima facie proof of a prior felony conviction by producing a certified copy of the records of the Department of Corrections. Jurisprudence has also allowed the establishment of the prior convictions through other competent evidence. State v. Curtis, 338 So.2d 662 (La.1976). La.R.S. 15:529.1(D) provides that the identity of the accused must be established to the satisfaction of the trial judge.
The defendant argued that the documentary offerings of "S-1"-"S-3" and the witnesses' testimony offered by the state at the combined hearing on the motion to quash the habitual offender bill and the motion to suppress the guilty pleas entered in his three prior convictions, were insufficient to fulfill the state's burden of proof. In particular, the defendant alleged that the evidence of his identity with regard to the first two prior convictions of aggravated robbery and attempted armed robbery was insufficient. The hearing was held on April 30, 1992. Due to the inability of the state to locate one of its witnesses, the matter was held open and continued. Additional documentary evidence, "S-4" and "S-5," was filed at the August 20, 1992, hearing. Both the state and the defense filed briefs and the judge took the matter under advisement.
At the first hearing, the bills of information and the court minutes of either the guilty pleas or sentencings of the three prior convictions were presented. Three witnesses testified. Lieutenant Kitchings testimony tied the defendant to the attempted armed robbery conviction. Officer Martone testified that defendant was convicted of attempted second degree murder and possession of a firearm by a convicted felon, the present convictions. Officer Pantalion testified that defendant committed the offense of public intimidation.
At the second hearing the bill of indictment and the court minutes of the guilty plea and sentencing on the aggravated battery charge were presented, "S-4," along with the defendant's pen-pack, "S-5". The pen-pack covered the defendant's first two convictions and included a photograph of the defendant.
In State v. Hardy, 174 La. 458, 141 So. 27 (1932), the court considered photographs attached to the certificate of the warden of the state penitentiary sufficient evidence in and of themselves of the defendant's identity as the one who committed the prior crimes. In the present case, a photograph was attached to the defendant's pen-pack and identified him as having been convicted of the charges of aggravated battery and attempted armed robbery, the first two prior crimes the defendant was charged with committing. The judge at the hearings had ample time to view the defendant during the hearing and at trial. This, coupled with the testimony of the three officers, was sufficient evidence from which the judge could find that the defendant was the one who committed the prior crimes with which he was charged in the habitual offender bill.
The defendant additionally argued that the state failed to prove that the cleansing period had not elapsed. La.R.S. 15:529.1(C) provides:
C. This Section shall not be applicable in cases where more than five years have elapsed since the expiration of the maximum sentence, or sentences, of the previous conviction, or convictions, and the time of the commission of the last felony for which he has been convicted. In computing the period of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said five year periods.
The state provided evidence of the beginning and ending dates of time served on both the convictions of aggravated battery (August 25, 1977 to August 25, 1979), and attempted armed robbery (July 15, 1982 to July 24, 1988) by introducing the certified copy of defendant's pen pack. No evidence was found in the record to establish when the defendant began serving his sentence on the public intimidation conviction despite the reference to a date by the judge in his ruling. However, since the record clearly establishes that the defendant pled guilty to the charge of public intimidation on October 1, 1990, it is obvious the cleansing period had not elapsed *620 prior to the commission of the present crime of attempted second degree murder on June 4, 1991 for which he was convicted on October 22, 1991.
CONCLUSION:
Sufficient evidence was presented for a jury to find the defendant guilty beyond a reasonable doubt of attempted second degree murder. Therefore the defendant's conviction on this charge is affirmed. The defendant's failure to argue his second assignment of error constituted a waiver of that alleged error. As to the third assigned error we find no error under the applicable burden of proof; no error existed in the defendant's adjudication as a habitual offender.
However, in pronouncing the defendant's sentence the court failed to pronounce a separate sentence as to each of defendant's convictions. Only a single sentence as a habitual offender, fourth offense was imposed. For this reason, the defendant's sentence is set aside and vacated and the matter remanded for resentencing.
CONVICTION AFFIRMED; SENTENCE SET ASIDE AND REMANDED FOR RESENTENCING.
NOTES
[1] It should be noted that since both of the defendant's convictions were obtained on the same date and arose out of a single act or episode only one of his sentences is subject to enhancement due to defendant's habitual offender status. See the "Sherer rule" as interpreted in State ex rel. Porter v. Butler, 573 So.2d 1106 (La.1991).
[2] Act No. 896 of the 1993 Regular Legislative Session amends R.S. 15:529.1(D)(1) to provide that in a habitual offender proceeding the district attorney has the burden of proving all issues of fact beyond a reasonable doubt. Because this statute became effective on August 15, 1993, it does not apply to the case sub judice.