NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

NOEL JESUS GORDILLO, *Appellant*.

No. 1 CA-CR 25-0115

FILED 05-13-2026

---

Appeal from the Superior Court in Maricopa County
No. CR2023-111151-001
The Honorable Geoffrey H. Fish, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael T. O'Toole
*Counsel for Appellee*

Bain & Lauritano, P.L.C., Glendale
By Amy E. Bain
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Andrew M. Jacobs and Judge Brian Y. Furuya joined.

---

**M O R S E**, Judge:

¶1        Noel Jesus Gordillo ("Gordillo") appeals his conviction for second-degree murder. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND[1]

¶2        On March 5, 2023, at around 8:00 p.m., "John"[2] rode his bike near 28th Drive and West Cactus Road and stopped to speak with Gordillo's sister. During the conversation, Gordillo approached the pair, took John's bike, and rode off. John felt nervous and left to find his friend ("Michael") to warn him that he might be in danger. John found Michael and tried to get his attention. But Gordillo then rode the stolen bicycle to Michael, pointed a gun, yelled "hey, Michael," and shot him.

¶3        Michael ran across the street into a restaurant. He bled from his mouth and collapsed onto a table and then the floor. He then stood up and left the restaurant, leaving a backpack on the floor, and ran across the street, leaving a trail of blood. Michael entered a convenience store holding his bloody jaw and collapsed. Michael later died from the gunshot wound to his head.

¶4        John followed Michael to the restaurant and grabbed the backpack. John then followed Michael to the convenience store, but the employees had locked the doors and did not allow John to enter. John later retrieved Michael's scooter from near where he had been shot and returned the scooter and backpack to Michael's girlfriend. The next day, John retrieved his stolen bicycle from Gordillo's sister and had his friend call "Silent Witness"—an anonymous tip line—to report the shooting.

---

[1]        We view the evidence in the light most favorable to sustaining the verdict and resolve all reasonable inferences against Gordillo. *See State v. Stroud*, 209 Ariz. 410, 412, ¶ 6 (2005).

[2]        We use pseudonyms to protect the privacy of victims and witnesses.

**¶5**        Eventually, on March 14, 2023, John chose to speak with the police because he felt he "had to do what's right." John identified Gordillo from a photographic lineup, and, on March 15, 2023, Gordillo was arrested.

**¶6**        The State charged Gordillo with second-degree murder and, after a fifteen-day trial, a jury convicted him. The trial court sentenced Gordillo to 20 years in prison. Gordillo timely appealed and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

**¶7**        On appeal, Gordillo challenges the denial of his motion for new trial. Gordillo also contends the court erred by allowing a detective to testify as an expert without providing the required foundation.

### I.        Motion for New Trial or Judgment of Acquittal.

**¶8**        Gordillo moved for a new trial under Arizona Rule of Criminal Procedure ("Rule") 24.1. Gordillo argues the trial court erred in denying the motion because there was "insufficient evidence to support" the conviction and the prosecutor knowingly presented false testimony.

### a.  Sufficiency of the Evidence.

**¶9**        First, Gordillo argues the trial court erred in denying his Rule 24.1 motion for a new trial because the verdict was contrary to the weight of the evidence.

**¶10**        We review a trial court's denial of a motion for new trial under Rule 24.1(c)(1) for an abuse of discretion, and we will find no abuse if the evidence was sufficient to support the challenged verdict. *State v. Harm*, 236 Ariz. 402, 406, ¶ 11 (App. 2015).

**¶11**        The trial court may grant a new trial if "the verdict is contrary to law or the weight of the evidence." Ariz. R. Crim. P. 24.1(c)(1). In considering the sufficiency of evidence, we view all facts in favor of the verdict and resolve all evidentiary conflicts against the defendant. *State v. Pena*, 235 Ariz. 277, 279, ¶ 5 (2014). Our review is confined to determining whether there is substantial evidence to support the verdict. *Id*. "Substantial evidence is more than a mere scintilla and is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Ellison*, 213 Ariz. 116, 134, ¶ 65 (2006) (cleaned up). Substantial evidence may be direct or circumstantial. *State v. Pena*, 209 Ariz. 503, 505, ¶ 7 (App. 2005). If

reasonable people "could differ as to whether the evidence establishes a fact in issue, that evidence is substantial." *State v. Mincey*, 141 Ariz. 425, 432 (1984). We do not "reweigh the evidence to decide if [we] would reach the same conclusions as the trier of fact." *State v. Barger*, 167 Ariz. 563, 568 (App. 1990).

**¶12**      Gordillo highlights that no weapons, bullet casings, or projectiles were found at the scene, no video of the actual shooting existed, and no DNA testing was done. Gordillo also contends that John's testimony lacked credibility due to inconsistent statements and drug impairment at the time of the shooting.

**¶13**      John testified he saw Gordillo shoot Michael and identified Gordillo in a photo lineup. The jury saw photographs and video footage placing Gordillo at the scene of the shooting. Although Gordillo initially denied it, he eventually admitted to being in the area that night. Text messages from Gordillo to another individual before the shooting demonstrated Gordillo's attempt to purchase a weapon and bullets and that Gordillo had plans to "pull up" on someone and get them. Lastly, the jury was permitted to use Gordillo's conflicting statements about whether he was present at the scene of the shooting as showing "consciousness of guilt." *See State v. Fulminante*, 193 Ariz. 485, 494, ¶ 27 (1999).

**¶14**      To the extent Gordillo attacks John's credibility as a witness, he demonstrates no reversible error. Gordillo's counsel subjected John to cross-examination, where his drug use was presented to the jury to impeach his testimony. *State v. Orantez*, 183 Ariz. 218, 222 (1995) ("Evidence of intoxication at the time of observation is admissible to attack a witness on [his] ability to perceive and remember."). Similarly, Gordillo's counsel impeached John's credibility with his prior inconsistent statements. *See* Ariz. R. Evid. 613. Despite this evidence, the jury accepted John's version of events. *See State v. Hall*, 204 Ariz. 442, 455, ¶ 55 (2003) ("The credibility of witnesses [] is a matter for the jury.").

**¶15**      Substantial evidence supports the jury's verdict. As such, Gordillo has not demonstrated that the trial court abused its discretion in denying his motion for new trial. *See State v. Fischer*, 242 Ariz. 44, 52, ¶ 28 (2017) ("The appellate court's role is not to weigh the evidence. It is to determine whether, resolving every conflict in support of the [verdict], substantial evidence supports the [verdict].").

### b. Knowing Presentation of False Testimony.

**¶16** Gordillo argues the trial court erred in denying his motion for new trial because the State knowingly presented John's false testimony. Gordillo contends the State knew John's testimony regarding his possession and use of Michael's backpack was false because the story changed throughout the case and the State did not call Michael's girlfriend as a witness. Gordillo alleges this misconduct violated his right to due process.

**¶17** Absent a clear abuse of discretion, we will not disturb the trial court's ruling on a motion for new trial based on prosecutorial misconduct. *See State v. Lee,* 189 Ariz. 608, 616 (1997). However, we review de novo alleged due process violations. *State v. Hargrave*, 225 Ariz. 1, 13, ¶ 42 (2010).

**¶18** Leading up to trial, the State's witnesses told conflicting and changing stories regarding Michael's backpack and where John went immediately after the shooting. At one point John stated he retrieved the backpack from his friend's girlfriend and, at another point, denied taking the backpack from the restaurant. John's testimony and pre-trial statements contained other inconsistencies, including, whether he knew Michael at the time of the shooting and whether he looked through the backpack before giving it to Michael's girlfriend.

**¶19** However, John admitted he had not been honest in his initial conversations with police. When asked why, John testified that the victim was his friend and he wanted justice for him, he felt guilty about not being honest, and he was scared about the legal repercussions of his dishonesty. At trial, he stated he was "not as scared and nervous," and wanted "to tell the whole truth."

**¶20** To prevail on a claim that the state presented false testimony, a defendant must establish that "(1) the testimony [] was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material." *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003) (citing *Napue v. Illinois*, 360 U.S. 264, 269–71 (1959)). "[A] new trial is not required unless we find [testimonial] inconsistencies to be of such a nature as to convince this Court that the witness was committing, or had committed, perjury." *State v. Morrow*, 111 Ariz. 268, 271 (1974) (cleaned up). And "[w]hile prosecutors may not knowingly allow a witness to testify falsely, cross-examination is the appropriate tool for probing the truthfulness of a witness's statements." *State v. Rivera*, 210 Ariz. 188, 190, ¶ 11 (2005) (citation omitted); *see also id*. at

194, ¶ 28 ("Absent a showing that the prosecution was aware of any false testimony, the credibility of witnesses is for the jury to determine.").

**¶21** Gordillo fails to demonstrate that John's testimony was false; he shows only that John had made prior inconsistent statements. Mere inconsistency in testimony by government witnesses does not establish the prosecutor knowingly used false testimony. *United States v. Sherlock*, 962 F.2d 1349, 1364 (9th Cir. 1989); *see also United States v. Bailey*, 123 F.3d 1381, 1396 (11th Cir. 1997) (explaining perjury is not established by the fact that a witness's "testimony is challenged by another witness or is inconsistent with prior statements" (citation omitted)).

**¶22** The trial court highlighted this conclusion stating, "this [c]ourt can certainly not make th[e] determination that this was perjury because the [c]ourt is not sure what the truth is, frankly." Regarding the State's decision to not call Michael's girlfriend, the trial court stated it was the State's "own trial strategy" to make that determination. Gordillo does not point to any error aside from his conclusory statement that the State knew John's testimony was false. On this record, Gordillo has not demonstrated any error. *See State v. Ferrari*, 112 Ariz. 324, 334 (1975) (explaining that inconsistent statements alone do not demonstrate that the State knowingly used perjured or false testimony); *see also Tapia v. Tansy*, 926 F.2d 1554, 1563 (10th Cir. 1991) ("Contradictions and changes in a witness's testimony alone do not constitute perjury and do not create an inference, let alone prove, that the prosecution knowingly presented perjured testimony.").

## II. Admission of "Expert" Testimony.

**¶23** Gordillo argues that his right to due process was violated because the trial court improperly allowed a detective to testify as an expert. Gordillo contends the State failed to lay adequate foundation for the detective's expert testimony, the State did not provide proper notice to the defense to use the detective for expert testimony, the testimony that he was expecting to find a "small caliber wound" violated the trial court's instruction not to opine "specifically on the caliber of the bullet," and the testimony differed from the expert testimony of the forensic examiner. Gordillo then argues that the admission of the testimony prejudiced him because it weakened his case.

**¶24** When the State began questioning the detective based on images of Michael's wound, Gordillo's counsel objected. Gordillo's counsel cited a variety of grounds, including relevancy, speculation, lacking

foundation, Rule 403 issues, and that it was improper expert testimony. The trial court stated that it wanted to hear the question and requested the State lay more foundation regarding the detective's experience with gunshot wounds. Gordillo's counsel responded "[s]o the [c]ourt is allowing his nonexpert opinion?" The trial court responded that, after the State laid more foundation, the detective could testify about Michael's wound. However, the trial court stated that the detective should not testify "specifically what the caliber of this bullet [was]." The State then proceeded to lay more foundation about the detective's experience with gunshot wounds. When the detective's testimony moved into how gunshot wounds differ based on the type of gun used, Gordillo's counsel objected again, arguing the testimony was improper expert testimony. The trial court overruled this objection stating that the testimony was based on the detective's "own experience and training." When the State asked the detective what sort of gun he was looking for based on his experience with gunshot wounds, Gordillo's counsel objected for relevance. The trial court overruled this objection. The detective stated he was looking for a small-caliber weapon because the bullet wound was small. He also testified that some weapons do not leave casings or, alternatively, no casings would be left at the scene of a shooting if the shooter fired the gun from inside a bag or container.

**¶25** We review evidentiary rulings for an abuse of discretion. *State v. Blakely*, 204 Ariz. 429, 437, ¶ 34 (2003). Arizona Rule of Evidence 701 provides that lay witness testimony must be "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

**¶26** Here, the detective testified based on his perceptions of the photos of the wound. The testimony was helpful to determine facts in issue, i.e., whether the gun used would have made a "pop" sound, whether it was the same gun found at Gordillo's apartment, and whether it was big enough to protrude from a backpack. His testimony was not based on any specialized knowledge and was reasonably based on his observations and experience. *See State v. Romero*, 258 Ariz. 237, 248, ¶ 34 (App. 2024) ("When a lay witness draws a reasonable inference from his 'firsthand knowledge and perceptions of a situation,' the testimony is admissible . . ." (quoting *State v. Ayala*, 178 Ariz. 385, 388 (App. 1994))). Additionally, the detective stayed within the trial court's parameters by not opining about the specifics of the caliber of the bullet, only stating generally he was "expecting to see a small caliber round."

¶27        Gordillo does not point to any authority suggesting that the challenged testimony in this case could only be offered by an expert. To the contrary, observation that the wound appeared consistent with a small-caliber firearm seems squarely within the witness's firsthand knowledge and perceptions of the situation as contemplated in *Romero*. We also note that this approach finds support from other jurisdictions. *See State v. Williams*, 439 So.2d 663, 666 (La. App. 1993) (permitting lay testimony from police that a wound was made from "a small caliber weapon" because it "did not require expert ballistics tests or knowledge" and the witness was "not asked to identify the caliber but only its relative size"); *State v. Platt,* 241 N.E.3d 313, 337–39, ¶¶ 73–79 (Ohio App. 2024) (allowing lay opinion testimony about firearm handling and safety, explaining police officers "may offer lay testimony concerning matters that are within the officer's experience and observations" (cleaned up))); *State v. Morrison*, 847 S.E.2d 238, 244 (N.C. App. 2020) (allowing lay testimony from a victim that he heard shots from a semi-automatic (versus automatic) weapon based on his own perception and prior knowledge of guns); *People v. Oliver*, 427 N.W.2d 898, 904 (Mich. App. 1988) (allowing lay opinion testimony by officers that dents in car were consistent with damage from small-caliber bullets). The witness offered permissible lay opinion testimony and Gordillo has not demonstrated any error by the trial court.

## CONCLUSION

¶28        For the foregoing reasons, we affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:        JR