FORET, Judge.
Defendant, Perry Leo Simms, was convicted of second degree murder, a violation of La. R.S. 14:30.1, and was sentenced to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. Defendant appeals this conviction, raising two assignments of error.
FACTS
On the night of July 31, 1987, at approximately midnight, John Robertson was awakened by the sound of a doorbell at his home in the City of Opelousas. At this point, Robertson overheard parts of a conversation between his daughter, Mary Just-ina Robertson, and an unknown caller. As best he can recall, the caller informed Mary Justina that he had received a phone call for her sister from McDonalds.[1] Thereafter, Robertson heard Mary Justina walk out of the door and down the driveway. He states that it appeared to him that she was walking barefooted at this time. According to Robertson, he assumed his daughter was going to answer a phone call at the home of Rosalie Simms, located across the street, because that was where his daughters received their calls. In fact, approximately one hour earlier, the victim had taken a phone call at the Simms residence.
Mr. Robertson woke up approximately one-half hour later and noticed that his daughter had not returned. He also noted that the door in the kitchen was open and a light was on. He then went back to sleep and woke up again at approximately 2:00 A.M. Noticing that his daughter still had not returned, he awakened his wife and daughter, Denise, and walked across the street to the Simms residence to see if Mary Justina was there. At this time, they were met by defendant’s brother, John Simms, who was just coming in. John checked inside the house for Mary Justina and advised the Robertsons that the only one inside was his brother, Perry, who appeared to be asleep. Shortly, thereafter, Robertson filed a missing person’s report with the St. Landry Parish Sheriff’s Office.
The following day, August 1, 1987, Officer Marvin Dumes of the St. Landry Parish Sheriff's Office responded to a call by Mrs. Rosalie Simms, mother of the defendant. According to Officer Dumes, Mrs. Simms advised him that there were some things going on that she did not understand and, in light of the disappearance of Mary Justi-na Robertson, she wanted to apprise the Sheriff’s Office of her findings. Specifically, she informed Officer Dumes that on the morning of August 1, she found a flowered bed sheet in her closet with two or three small stains on it that appeared to be blood, and that the said sheet was on her daughter’s bed when they left to go out that evening. Additionally, Mrs. Simms stated that an earring was found in her home that same morning and the only person she knew who wore this type earring was the victim. Mrs. Simms also advised Officer Dumes that everyone in the Simms home had gone out that evening, with the exception of the defendant, Perry Leo Simms.
Suspecting foul play, Officer Dumes sent for a detective to provide assistance in the matter. He also went to the Robertson home and spoke to the victim’s father, John Robertson, who related the aforementioned facts concerning his daughter’s disappearance. Shortly thereafter, Officer Benny *759 Ardoin arrived at the scene and was advised of the facts concerning the victim’s disappearance. At this point, Officer Dumes asked the defendant to accompany him to the Sheriffs Office for questioning, and the defendant consented. Defendant and his sister, Albertha Simms, then accompanied Officer Dumes to the St. Landry Parish Sheriffs Office in Officer Dumes’ police unit. Upon arriving at the Sheriff’s Office, defendant was taken to Benny Ar-doin’s office where he was advised of his Miranda rights. After this, the defendant was interrogated by Detective Craig Orte-go, who was called in on the case, and Officer Ardoin, for approximately an hour, during which time the defendant denied any involvement in Mary Justina Robertson’s disappearance.
While under interrogation in Ardoin’s office, defendant was also asked to remove his shirt to check for cuts and scratches. He complied and detective Ortego noticed that the defendant had a scratch on his back which appeared to be fresh. According to Detective Ortego, defendant was unable to explain where he had received the scratch. After being interrogated in Officer Ardoin’s office, defendant was taken to a room located within the St. Landry Parish Jail referred to by the officers testifying as the “bonding room” while parish deputies set out to further investigate the victim’s disappearance and check out the defendant’s story. The record reflects that the defendant was placed in the bonding room between 5:00 and 6:00 P.M. with instructions from Detective Ortego that the defendant was being held for questioning. Detective Ortego returned to the Sheriff’s Office approximately 3 to 4 hours later, noting that the sheriff’s department had not found any evidence of criminal wrongdoing. Thereafter, at approximately 12:05 A.M., Deputies A1 Guillory and Roland Riv-ette entered the bonding room and attempted to question the defendant concerning Mary Justina’s disappearance. This interrogation lasted anywhere from 10 to 15 minutes as the defendant did not want to talk and complained of being tired. Approximately 15 minutes later, Detective Or-tego began a third interrogation of the defendant. According to Ortego, during the first part of the interrogation, he and the defendant spoke mostly about the defendant’s personal problems. However, approximately IV2 hours into the questioning, the defendant said, “You ready to start writing?” When Ortego responded affirmatively, defendant said, “I’m ready to talk.” He then went on to confess to the murder of Mary Justina Robertson. The following morning, the defendant led parish deputies to the location of the body.
On appeal, defendant assigns two errors, to-wit:
1. The trial judge erred in his denial of the motion to suppress statements made by the defendant after being taken to the Sheriff’s Department as well as any and all derivative evidence of such. statements.
2. The jury verdict is contrary to the law and evidence in that the evidence does not support a finding of guilty of the offense charged.
ASSIGNMENT OF ERROR NO. 1
At the outset, we must determine the point at which defendant was placed under arrest. La.C.Cr.P. art. 201 defines an arrest as follows:
“Art. 201. Arrest defined
Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him.”
It is the circumstances indicating an intent to effect an extended restraint on the liberty of the accused and not the precise timing of an officer’s declaration that the accused is under arrest that determines when an arrest is actually made. State v. Bell, 395 So.2d 805 (La.1981). The totality of the circumstances must be considered. Neither the defendant’s subjective impressions nor the formality of an official arrest will be determinative of this issue. State v. Thibodeaux, 414 So.2d 366 (La.1982).
*760 Turning now to the facts of our case, Officer Marvin Dumes testified that he asked the defendant to accompany him to the Sheriffs Office for questioning and that the defendant agreed to do so. The record reflects that no one advised the defendant that he had to go with Officer Dumes nor is there any suggestion of coercion or intimidation. Officer Dumes stated that if the defendant had refused to accompany him, he would not have forced him to go to the Sheriff’s Office at this time. Considering this, we feel that the defendant was not under arrest at the time he accompanied Officer Dumes to the St. Landry Parish Sheriffs Office. However, the evidence overwhelmingly establishes that the defendant was under arrest at the time he was placed in the bonding room while the investigating officers went back out to search for additional evidence and check out the defendant’s story. The record reflects that the bonding room is a locked, secured facility controlled by electronic locks. One is not free to come and go as he pleases. Thus, the defendant was not free to walk out of the bonding room at any time but, instead, was required to request permission to leave from the appropriate Sheriff’s Department personnel. Furthermore, Officer Ardoin testified that after the defendant was questioned initially in his office and thereafter placed in the bonding room, he was not free to leave. Detective Craig Ortego, who was in charge of the investigation, stated that he advised the defendant, after defendant was questioned in Ardoin’s office, that he “needed” him to stay in the bonding room while they did more investigating. He then advised the desk personnel that the defendant was being held for further questioning and that he (Detective Ortego) would be back later on. As it turned out, Detective Ortego did not return until 3 to 4 hours later and defendant remained in the bonding room at least until 2:30 A.M. the following morning, a period of approximately 8 hours.
In State v. Sterling, 444 So.2d 273 (La.App. 1 Cir.1983), the investigating officer advised the defendant, after he gave a statement, to stay at the office until the officers returned. The defendant remained in custody while the investigation continued and a second statement, inculpatory in nature, was taken from the defendant approximately 8 hours later, at which time the defendant was formally arrested and booked. Considering this, it was held that the defendant was arrested at the point that he was detained by the police officers. See also, State v. Rebstock, 418 So.2d 1306 (La.1982). In view of the above cited facts, it seems clear to us that the defendant was under arrest from the time he was placed in the bonding room located in the St. Landry Parish Jail.
WAS THERE PROBABLE CAUSE TO ARREST DEFENDANT?
Having determined the point at which the defendant was placed under arrest, we must now decide whether or not the investigating officers had probable cause to arrest the defendant at the time he was placed in the bonding room by the investigating officers. A careful review of the record reveals that the Sheriff’s Department was aware of the following facts at the point in time in which defendant was arrested:
a. That Mary Justina Robertson was missing,
b. That Mary Justina often took phone calls at the home of the defendant located across the street,
c. That at approximately midnight on the night of July 31, the victim’s father, John Robertson, heard someone come to the door of his home, a conversation ensued between his daughter, Mary Justi-na, and an unknown caller concerning a phone call from McDonalds. Robertson states that, immediately thereafter, his daughter walked out of the house and has not been seen since that time. Robertson further stated that he could not identify the caller and could not tell if it was a man or a woman.
d. That, according to the victim’s father, it sounded as if she walked down the driveway without shoes (indicating she did not intend to go very far). Robertson also stated that he did not hear a vehicle at this time.
*761 e. That the Simms and Robertson homes are across the street from one another.
f. That the victim left the door open and light on when she exited the Robertson home.
g. That, according to the victim’s father, she was not one to stay out until the late hours of the night and thus, her disappearance was not consistent with her past behavior.
h. That later on that night, Robertson and his daughter went to the Simms home looking for the victim and was advised by defendant’s brother, who was just coming home at the time, that the victim was not there and that the defendant was sleeping.
i. Mrs. Rosalie Simms, mother of the defendant, advised the investigating officers that something happened in her home although she didn’t know what it was. She then went on to state that the defendant was left home alone that evening and that when she returned in the early hours of the morning, clothes were washing in the washing machine. She also stated that she found a sheet bundled in her closet with two or three small stains that appeared to be blood, and that the sheet was on her daughter’s bed when they left to go out that evening. Mrs. Simms also informed the officers that an earring was found in her home and that the only person she knew who wore this type earring was the victim.
j. The investigating officers found no evidence of a skirmish in the Simms home and saw nothing unusual in the home.
k. While the defendant was being interrogated in Officer Ardoin’s office, he was asked to remove his shirt. Defendant did so and the officers noticed a scratch on his back which appeared to be fresh.
In State v. Ruffin, 448 So.2d 1274 (La.1984), the Supreme Court defined probable cause as follows:
“Probable cause to arrest without a warrant exists when the facts and circumstances within the officer’s knowledge, or of which he had reasonably trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Edwards, 406 So.2d 1331 (La.1981); State v. Marks, 337 So.2d 1177 (La.1976). Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Commodore, supra [418 So.2d 1330 (La.1982)]; State v. Edwards, supra; State v. Marks, supra.”
Mere suspicion is not enough to justify an arrest. State v. Scott, 389 So.2d 1285 (La.1980). It is our finding that the above cited facts, viewed as a whole, were not sufficient to justify a man of ordinary caution in believing that the defendant was guilty of having committed a crime. In fact, these facts do not even provide probable cause to believe that a crime was committed by anyone and the officers’ testimony substantiates our position in this regard. Officer Dumes acknowledged' that he looked around the Simms home and there was no evidence of a struggle and no evidence of any wrongdoing. Officer Benny Ardoin stated that up until the time the defendant confessed, the Sheriff’s Department did not even know that a crime had been committed. Considering this, and in view of the limited facts known to the police officers at the time the defendant was arrested, we have little difficulty in finding that probable cause did not exist to arrest defendant. Defendant’s arrest was therefore illegal.
Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), held that for a confession to be admissible, the state must demonstrate that the connection between the illegal arrest and the confession is so attenuated that the confession could not properly be considered the fruit of the illegal arrest. Factors to be considered in making this determination are whether the defendant was advised of his Miranda rights prior to making the confession, the temporal proximity of the *762 arrest and confession, the existence of intervening circumstances, and the purpose and flagrancy of any official misconduct. However, the voluntariness of the statement is always the threshold requirement. Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); State v. Serato, 424 So.2d 214 (La.1983).
Turning now to the facts of the instant case, defendant was taken into the Sheriffs Office at approximately 4:00 P.M. on August 1, 1987 and, after being advised of his Miranda rights, was questioned for a little over an hour. After this interrogation was completed, defendant was placed in a room referred to by the Sheriffs deputies as the “bonding room.” According to the testimony of the suppression hearing, the bonding room is not a jail cell and is used primarily as a conference room where inmates can discuss bonding arrangements and other matters with their attorneys, family, and friends. The record reflects that the defendant was left alone in the bonding room for at least 5 hours. During this time, no one interrogated, intimidated, or threatened the defendant in any way. Thereafter, around midnight, two police officers entered the bonding room to attempt to question the defendant about the victim’s disappearance. However, this interrogation lasted, at most, 10 to 15 minutes. Shortly thereafter, Detective Ortego began questioning the defendant. It is important to note that Detective Ortego spent much of the time simply talking to the defendant about his personal problems in an attempt to get to know him. Approximately 1½ hours into their discussion, the defendant stated to Ortego, “You ready to start writing?” He then confessed to having strangled Mary Justina Robertson.
Considering the factors enumerated in Brown v. Illinois, supra, we must first note that the record clearly establishes that the defendant was read his Miranda rights after being taken to the Sheriffs Office. Insofar as the temporal proximity between the arrest and the confession is concerned, the record reflects that the defendant’s confession came at least 8 hours after his arrest. As for any intervening circumstances, we note that after the defendant was questioned initially, he was left alone in the bonding room for at least 5 hours. Thus, he was not continuously interrogated from the time he was brought in by Officer Dumes. As for the conduct of the arresting officers, defendant was not handcuffed when he was brought in to the Sheriff’s Office nor was he held at gunpoint or told that he had to go to the Sheriff’s Office. Thereafter, when the defendant was placed in the bonding room, he was simply informed by the investigating officers that they “needed” for him to wait at the Sheriff’s Office while they did some more investigating. Considering this, we see nothing in the manner of the defendant’s transportation to the Sheriff’s Office or subsequent incarceration in the bonding room which gives the appearance of having been calculated to cause surprise, fright, and confusion. Finally, while we find fault in the Sheriff’s Department decision to hold the defendant at a time when they did not even know that a crime had been committed, the record reflects that, after the defendant was placed in the bonding room, the Sheriff’s Department personnel did return to the scene and conducted an independent investigation into the victim’s disappearance rather than simply resorting to an all out, continuous interrogation of the defendant as a means of determining the victim’s whereabouts. We therefore find that the conduct of the Sheriff’s Department personnel was not flagrant or purposeful in nature.
Considering the above and foregoing, we find that the confession in question was an act of the defendant’s free will and was sufficiently attenuated from the illegal arrest to be admissible in court. The facts of the instant case are somewhat analogous to State v. Freeman, 503 So.2d 753 (La.App. 3 Cir.1987), in which case we held that the defendant’s statement, made approximately 5 hours after his arrival at the Sheriff’s Office, during which time he was questioned off and on, was sufficiently attenuated from the alleged illegal arrest and therefore admissible at trial. Accordingly, we find defendant's first assignment of error to be without merit.
*763 ASSIGNMENT OF ERROR NO. 2
In convicting the defendant of second degree murder, the jury necessarily found that the defendant had specific intent to kill Mary Justina Robertson. Defendant contends in his second assignment of error that the State failed to prove the requisite specific intent to kill. We disagree. To begin with, the coroner testified that the cause of death was strangulation. This is corroborated by the defendant’s confession in which he acknowledged that he grabbed the victim around the neck, pulled her to his sister’s room and starting choking her. He further stated that after she stopped breathing, he drug her outside and pushed her body in a septic pond. Viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of second degree murder, including specific intent to kill, beyond a reasonable doubt.
In view of the above and foregoing, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. The record reflects that both the victim, Mary Justina Robertson, and her sister were employed at McDonalds on the date the victim was killed.