liAMY, Judge.
On May 23, 1993, Ann Chapman died as a result of manual strangulation. On May 26, 1993, defendant, Michael Freeman confessed to killing Ms. Chapman. Defendant was indicted with one count of second degree murder on July 22, 1993. On June 14, 1994, defendant waived his right to trial by jury and his bench trial commenced. The trial court found defendant guilty of second degree murder on June 17, 1994. After defendant was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence, he timely perfected this appeal.
Defendant urges the following errors: (1) the trial court erred in finding defendant’s confession to be free and voluntary and in denying defendant’s motion to suppress; (2) the evidence introduced at trial was insufficient to establish that the defendant was the perpetrator of the victim’s murder; (3) the evidence failed to establish that defendant possessed specific intent to commit the crime of second degree murder; and (4) the trial court erred in rejecting the testimony of defendant’s alibi witnesses.
JaFACTS
According to the defendant’s confession, during the early morning hours of May 23, *803 1993, he was drinking at Charles Johnson’s home until after 2:00 a.m. Around 3:00 a.m., the victim arrived at Mr. Johnson’s house. Mr. Johnson informed defendant that the victim wished to have sexual intercourse. The defendant stated that he and the victim walked to a park after leaving Mr. Johnson’s home. The victim sat on the ground, pulled down her shorts, and lifted up her shirt. Then, she laid on her back and smoked some crack which defendant gave her. After the victim finished smoking the crack, defendant knelt over the victim to prepare to engage in sexual intercourse with her. At this point, the victim asked the defendant for more crack. He told her that he did not have any more. The defendant stated that the victim “went off,” shoved him away, and indicated that she would not have intercourse with him until he provided her with additional crack. Defendant stated “[s]o then when I, my mind, I clicked to. That when I grabbed her around the neck.” He indicated that during the strangulation the victim struggled, that blood was coming out of her mouth, and that blood may have been bubbling out of her nose when he stopped choking her. Defendant stated that at this point he panicked, released his victim, and ran home.
FIRST ASSIGNMENT OF ERROR
Defendant maintains that he did not freely and voluntarily confess to the crime; therefore, he argues that the trial court erred in denying his motion to suppress the confession.
In the early morning hours of May 26, 1993, Detective McCall, Detective Terry, and Detective Weatherford went to defendant’s home. After defendant was awakened by one of his family members, he accompanied the police to the station. |3Pefendant stated that he knew that he was not under arrest and that he voluntarily went to the police station. Defendant was interrogated by the officers from shortly after 2:00 a.m. until 7:45 a.m., when he made a fifteen minute statement confessing to the murder of Ann Chapman.
The defendant attacks the admissibility of his confession on two bases: First, defendant argues that the circumstances under which he made the confession rendered it involuntary. Second, defendant maintains that since he was a special education student, his confession was involuntary.
CIRCUMSTANCES UNDER WHICH CONFESSION WAS MADE
Defendant alleges that he was interrogated while under the influence of drugs and alcohol, and while deprived of sleep; he was threatened and coerced into making the confession; and the confession was dictated to him by the police and was not his own statement.
With respect to defendant’s claims that the voluntariness of his confession was impaired by inebriation, crack ingestion, or lack of sleep, defendant testified that on the night he was taken to the station, he had been drinking beer and smoking crack for hours. Additionally, he stated that he had just fallen asleep when the policemen arrived at his home to question him. Defendant testified that he told the police that he was drunk, tired, and he wanted to go home, but that they would not release him.
Defendant also maintains that he was coerced into confessing to the crime. Defendant testified that at the station, the policemen told him he was charged with first degree murder and that he would get the death penalty. He testified that he was not read his rights until after he had given a statement on tape. He alleges that the police had blocked the door and had refused to allow him to leave. He stated that no one told him he was free to go.
UDefendant also seeks suppression of his confession alleging that when he was originally questioned concerning the crime, he denied the charge and only admitted to it after the detectives went over the details of the crime and showed him photographs. He stated that the police showed him photographs of the body, ran down the details of the crime and told him how he had strangled the victim. Defendant stated that the police dictated his confession to him and that it was not his words. Defendant further argues that the tape recorder was only turned on at the end of the questioning when defendant *804 made his statement, and it should have been turned on earlier.
Before the State may introduce a confession into evidence, it is incumbent upon it to affirmatively establish that the statement was not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-C.Cr.P. art. 703(G); LSA-R.S. 15:451; State v. Benoit, 440 So.2d 129, 131 (La.1983); State v. Ashworth, 554 So.2d 271, 274 (La.App. 3d Cir. 1989), writ denied, 561 So.2d 113 (La.1990). In addition, if the confession was made during custodial interrogation, the State must prove that the accused was advised of his Miranda rights and that he knowingly and intelligently waived those rights. LSA-Const. Art. 1, Section 13; Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Benoit, 440 So.2d at 131; State v. Coleman, 395 So.2d 704, 706 (La.1981).
The state offered the testimony of Detective Kenneth McCall, who brought defendant from his home to the police station and who interrogated defendant, to establish that defendant’s confession was not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises, that defendant was advised of his Miranda rights, and that defendant knowingly and intelligently waived these rights. Detective McCall testified that when defendant and he arrived at the station, Rthey went into Detective Weatherford’s office and that he advised defendant of his rights before he initiated questioning. He explained that he advised defendant of his rights by using a rights form, which defendant read and signed. He stated that defendant voluntarily and intelligently waived his Miranda rights. He stated that he had ascertained that defendant’s education level was eleventh grade and that he had observed defendant sign the waiver of rights form. He testified that he did not force, threaten or coerce the defendant into confessing, nor did he induce him to confess. He stated that defendant was coherent and did not seem to be under the influence of drugs or alcohol. He testified that to the best of his knowledge, the defendant’s statement was freely and voluntarily made.
Detective McCall further explained that he went over the details of the crime with defendant and questioned defendant for several hours before taping his confession in order to ascertain what happened before a statement was made. The State introduced the transcript of defendant’s confession into evidence. The transcript indicates that at the beginning of defendant’s statement, he stated his name and age, answered affirmatively when asked if he had been advised of his rights and whether he understood those rights, and signed his name to a Waiver of Rights which Detective McCall had read to him. The transcript reflects that at the end of defendant’s statement, he indicated that the statement was true and correct to the best of his knowledge, that no threats, force, or promises were made to secure his confession, that the statement was made by his own free will, and that he had been advised of his rights. Once again, defendant stated his name and age.
At trial, the State also introduced the waiver of rights form, which defendant signed. This form indicates that defendant was read his rights by 2:44 a.m., and that he signed the form stating that he had been read his rights and that he was willing to 16waive his rights, that he did not want a lawyer at this time, and that he understood what he was doing.
The State rebutted defendant’s assertion that his confession was not his own at trial. Defendant specifically denied that the “I clicked to” language in his confession were his words. He said the words were those of the police and he could not recall having ever used them before. However, the prosecutor then produced defendant’s statement from his 1986 conviction of carnal knowledge of a juvenile. In that statement, defendant said his mind clicked and he grabbed the victim by the neck and forced her to the ground. The State later called to the stand the police officer who had taken defendant’s statement in 1986. He testified that the transcript of the 1986 statement reflected what defendant had actually said to him.
This court and the Louisiana Supreme Court have held that a confession, which is challenged on the ground that the *805 accused was chemically impaired at the time of interrogation, will be rendered inadmissible only when the impairment is of such a degree that it negated defendant’s comprehension and rendered him unable to understand the consequences of his statement. State v. Robinson, 384 So.2d 332, 335 (La.1980); State v. Brooks, 505 So.2d 245, 247 (La.App. 3d Cir.1987). Whether the impairment exists and is of a degree sufficient to vitiate the voluntariness of a confession is a question of fact, and the trial judge’s findings will not be overturned unless they are not supported by the evidence. Id. Our review of the record indicates that the trial court’s finding that defendant’s alleged chemical impairment did not render his confession involuntary is amply supported by the evidence. Therefore, we find no error in the trial court’s finding. Furthermore, in light of Detective McCall’s testimony and the record, we find that the State proved beyond a reasonable doubt that defendant’s confession was knowingly and voluntarily made. Therefore, the trial_[7Court did not err in denying defendant’s motion to suppress.
SPECIAL EDUCATION STUDENT
An evidentiary presumption exists that an accused is sane and responsible for his actions. LSA-R.S. 15:432. Because of the presumption, once the State establishes beyond a reasonable doubt that a confession was freely and voluntarily made, the “defendant bears the burden of proving the existence of a mental abnormality which under the circumstances may have destroyed the voluntary nature of his confession.” State v. Glover, 343 So.2d 118, 120 (La.1977); State v. Bordelon, 597 So.2d 147, 149 (La.App. 3d Cir.), writ denied, 600 So.2d 678 (La.1992). Thus, the burden of proof shifts to the defendant to prove that he has a mental defect that renders him unable to understand his rights, intelligently waive them, or that prevented his statement from being intelligently and voluntarily made. Glover, on rehearing, 343 So.2d at 128; Bordelon, 597 So.2d at 150.
For the reasons set forth above, the State proved beyond a reasonable doubt that defendant’s confession was knowingly and voluntarily made. No evidence establishing a deficiency in defendant’s mental condition was produced at trial or at the hearing on the motion to suppress. Thus, defendant failed in his burden of proving the existence of a mental defect, and his confession cannot be suppressed on this basis.
SECOND ASSIGNMENT OF ERROR
Defendant maintains that the evidence was insufficient to convict him of second degree murder. Dr. Jay P. Mashburn, the medical examiner, testified that the victim had died as a result of strangulation. Photographs and records from the victim’s autopsy support Dr. Mashburn’s conclusion. Defendant did not offer any proof to controvert this evidence. Since the State proved beyond a reasonable doubt 1 gthat the victim died as a result of a homicide, the only issue before us with respect to the sufficiency of the evidence is whether the evidence, viewed in the light most favorable to the prosecution, was sufficient for any rational trier of fact to conclude that the State proved beyond a reasonable doubt that the defendant was the perpetrator of the crime and that he possessed specific intent to kill or inflict great bodily harm, a requisite element of second degree murder. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Hongo, 625 So.2d 610, 612 (La.App. 3d Cir.1993), imit denied, 93-2774, (La. 1/13/94), 631 So.2d 1163; State v. Brown, 594 So.2d 372, 384-85 (La.App. 1st Cir.1991).
The defendant argues that the evidence was insufficient to establish that he perpetrated the crime. Defendant maintains that there was a “wide variance” between his confession and the evidence introduced at trial, including: (1) The medical examiner, Dr. J. Parker Mashburn, testified that at least one wound was not typical of manual strangulation and that the neck wounds were more likely caused from grabbing from behind. In defendant’s confession, he stated that he knelt on top of her and strangled her from the front. (2) Dr. Mashburn testified that there was evidence of sperm in victim’s vagina and rectum. In defendant’s confession, he stated that victim had refused to have sex with him. (3) Charles Ray Johnson, who placed the victim with the defendant at *806 about 2:00 a.m. on the morning of the murder, testified that he told defendant that he did not have any drugs and he gave Freeman some wax instead. Defendant points out that the confession is devoid of any mention that the crack which the victim smoked was really wax.
When Dr. Mashburn testified that the cause of the victim’s death was manual strangulation, he stated that the injuries to the victim’s neck were either caused by strangulation resulting from someone grabbing her from behind or caused by 19strangling from the front with a repositioning of the hands. Dr. Mashburn stated that the damage to victim’s neck was not definitive of either rear or front strangulation. He presented the trier of fact with two theories about how the victim’s strangulation occurred. Since one of those theories was consistent with defendant’s confession, we cannot say that this medical opinion is inconsistent with defendant’s confession.
With respect to defendant’s assertion that the presence of sperm in the victim’s vagina and rectum was inconsistent with his confession because he stated that the victim had refused to have sexual intercourse with him, the testimony of three prosecution witnesses provided the trier of fact with an alternative source of the sperm in the victim’s vagina and rectum. Brenda Eh testified about the victim’s activities on the evening of May 22, 1993. Ms. Eli testified that she and the victim were soliciting crack cocaine in exchange for sexual favors outside Carter’s Lounge in Alexandria, Louisiana, when she and the victim were approached by Landry Colhns and Lanson Jimmerson and agreed to leave with them in a car. She testified that she and the victim had smoked crack. According to Ms. Eh, while she and Mr. Colhns had sexual intercourse in the back seat of the car, she beheved that the victim and Mr. Jimmerson were simultaneously engaged in sexual intercourse outside the car. The testimony of Mr. Colhns and Mr. Jimmerson corroborated Ms. Eh’s recollection of the events of May 22, 1993. Mr. Colhns remembered that Ms. Eh and the victim had been with him and Mr. Jimmerson on May 22, 1993, through the early morning of May 23, 1993. Mr. Colhns recalled that he had engaged in sexual intercourse with Ms. Eh in the car while Mr. Jimmerson and the victim were outside the car. It was his behef that they were having sex as well, although he did not see them. He testified that at about 2:00 a.m. Ms. Eh was dropped off near a store and the victim was dropped off at Carter’s Lounge. Similarly, Mr. Jimmerson testified 110that he and Ray Colhns picked up two females, although he could not remember the victim’s name or whether she smoked crack. He recalled that he had sexual intercourse with one of the females, and that she was dropped off at Carter’s Lounge after it had closed for the night. We therefore cannot conclude that the presence of sperm in the victim’s vagina and rectum was inconsistent with defendant’s confession.
The testimony of Ms. Eh, Mr. Colhns, and Mr. Jimmerson indicate that the victim would engage in sexual intercourse in exchange for crack. This evidence is consistent with defendant’s confession. At trial, Mr. Johnson’s testimony placed the defendant with the victim shortly before her death occurred, which corroborates defendant’s confession. Dr. Mashburn testified that the victim died as a result of manual strangulation and that she could have been strangled from the front. Additionally, he stated that the discharge of blood from the victim’s nose and mouth, which occurred according to defendant’s confession, would be consistent with her injuries. Thus, Dr. Mashburn’s testimony and the medical evidence is consistent with defendant’s confession in this respect. As defendant points out, there were some inconsistencies between Mr. Johnson’s testimony and the defendant’s confession in that defendant’s confession failed to mention that wax was given to the victim. Nevertheless, the trier of fact may accept or reject, in whole or in part, the testimony of any witness. The fact that portions of Mr. Johnson’s testimony conflict with defendant’s confession does not render the evidence accepted by the trier of fact insufficient. Hongo, 625 So.2d at 616. We find the evidence viewed in the light most favorable to the prosecution, including the defendant’s confession and the physical evidence, to be suffi *807 cient for a rational finder of fact to conclude that the defendant was responsible for the victim’s death.
InTHIRD ASSIGNMENT OF ERROR
“Second degree murder is the killing of a human being ... [w]hen the offender has a specific intent to kill or to inflict great bodily harm.” LSA-R.S. 14:30.1(A)(1). Specific intent is that “state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” LSA-R.S. 14:10(1). Specific criminal intent is a state of mind and, as such, it need not be proven as a fact, but it may be inferred from the circumstances present in the case and the actions of the defendant. Hongo, 625 So.2d at 613. Whether an accused possessed the requisite specific intent is an ultimate legal conclusion that must be resolved by the finder of fact. State v. Govan, 593 So.2d 833, 835 (La.App. 4th Cir.), writ denied, 600 So.2d 654 (La.1992); State v. Rayford, 476 So.2d 961, 964 (La.App. 1st Cir.1985).
In defendant’s confession, he conceded that his mind clicked and he grabbed his victim around the neck. He stated that blood was coming out of her mouth and may have been bubbling out of her nose when he stopped choking her. The medical examiner testified that the cause of death was manual strangulation and that the victim’s injuries were consistent with the discharge of blood. From the extent and severity of the injuries sustained by the victim, any rational trier of fact viewing the evidence in a light most favorable to the prosecution, could conclude that the State proved specific intent to kill beyond a reasonable doubt. State v. Simms, 554 So.2d 757, 763 (La.App. 3d Cir.1989), affirmed, 571 So.2d 145 (La.1990). We find no error in the trial court’s finding that State proved beyond a reasonable doubt that the defendant was guilty of second degree murder.
FOURTH ASSIGNMENT OF ERROR
Defendant argues that the trial eourt erred in rejecting the testimony of Roger |12Pale Shavers and Leroy Freeman, his two alibi witnesses. Mr. Shavers, defendant’s former boyfriend, testified that he walked the streets of Alexandria with defendant on the morning of the murder from 2:00 a.m. until 4:45 a.m. Leroy Freeman, defendant’s brother, testified that he saw the defendant and Mr. Shavers walking together at 2:00 a.m. and as late as 3:00 a.m. on the morning of the murder. The State impeached both defense witnesses with prior felony convictions. It is the role of the fact finder to weigh witness credibility; therefore, an appellate court will not second-guess the credibility determinations of the trier of fact beyond evaluating the sufficiency of all evidence presented. State v. Richardson, 425 So.2d 1228 (La.1983); Hongo, 625 So.2d at 612-13. Since we have already concluded that the evidence was sufficient to convict defendant of second degree murder, we find no abuse of discretion in the trial court’s rejection of defendant’s alibi witnesses.
ERRORS PATENT
accordance with Code of Criminal Procedure article 920, we have reviewed the record for errors patent and have discovered one. LSA-C.Cr.P. art. 880 provides that when sentence is imposed, the court shall give the defendant credit for time spent in actual custody prior to the imposition of sen-senThe record indicates the trial eourt failed to comply with Article 880. According-Accordingthe case is remanded and the trial court is ordered to amend the commitment and min-minentry of the sentence to reflect that the defendant is given credit for time served.
DECREE
Defendant’s conviction and sentence are affirmed. The case is remanded to the trial court to amend the commitment and the minute entry of the sentence to reflect that defendant is given credit for time served.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.